`IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| Anthony James Moore, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER RE § 1915A SCREENING** |
| | ) | **AND ORDER TO SHOW CAUSE** |
| vs. | ) | **WHY CLAIMS SHOULD NOT BE** |
| | ) | **SEVERED** |
| Timothy Schuetzle, | ) | |
| Fargo Police Department, | ) | |
| Thomas Dahl, suing all defendants in | ) | Case No. 1:06-cv-079 |
| their individual and official capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

On October 2, 2006, Plaintiff Anthony Moore ("Moore") lodged a civil rights complaint under 42 U.S.C. § 1983. On October 10, 2006, he lodged a proposed amended complaint. The following sets forth the court's screening of the proposed amended complaint pursuant to 28 U.S.C. § 1915A and the court's orders following screening.

I.      **BACKGROUND**

Moore was convicted by a jury on November 28, 2001, of gross sexual imposition and sentenced to twenty years in prison. He is currently incarcerated at the North Dakota State Penitentiary ("NDSP") in Bismarck, North Dakota.

Moore's proposed amended complaint sets forth the following claims:

Claim One          Deprivation of adequate exercise by prison officials during extended

confinement in administrative segregation resulting in cruel and

unusual punishment.

Dockets.Justia.com

Claim Two                  Unlawful retaliation by prison officials on four allegedly casually-related occasions for his having engaged in protected conduct.

Claim Three                Use of excessive force by prison officials when taking him to and from his cell amounting to cruel and unusual punishment.

Claim Four                 The refusal of the Fargo Police Department to provide copies of DNA tests related to his state-court conviction.

Claim Five                 Unlawful retaliation by Special Agent Dahl of the North Dakota Crime Bureau consisting of his allegedly maliciously instituting criminal proceedings against Moore.

In his prayer for relief, Moore seeks a transfer from state to federal custody for service of the remainder of his sentence and an order directing the Fargo Police Department to provide him with the DNA test results.   He seeks no specific relief as to Special Agent Dahl.[1]

---

[1] Counting the matter now before the court, Moore has lodged three federal civil rights actions against various penitentiary staff, contract physicians, state employees, and law enforcement agencies alleging no less than fourteen constitutional violations.

In 2004, Moore initiated a § 1983 action against penitentiary personnel and contract physicians.  Therein he asserted claims of deliberate indifference to his purported serious medical conditions and unlawful interference with his prison mail.  Finding no evidence to substantiate either of these claims, the court dismissed his action in February 2005. Moore v. Schuetzle, 354 F. Supp. 2d 1065 (D.N.D. 2005).  The Eighth Circuit subsequently denied his appeal.  Moore v. Schuetzle, 172 Fed.App'x 133, 2006 WL 758472  (8th Cir.).

In the fall of 2000, and while his appeal was pending in the first action, Moore filed another § 1983 action wherein he alleged, inter alia, that penitentiary staff had: (1) again exhibited deliberate indifference to the same purported medical conditions set forth in his 2004 complaint; (2) interfered with "privileged" mail; (3) erroneously deprived him of good-time credits; (4) conspired to have him committed to a psychiatric unit; (5) released his medical records without authorization; and (6) retaliated against him for filing a complaint with the State Nursing Board.  In addition, he complained that the director of the state crime laboratory had refused his request for DNA test results. Following an initial review of his complaint as mandated by 28 U.S.C. § 1915A, the court dismissed his complaint on the grounds that his complaint had both exhausted and unexhausted claims.  However, the court advised Moore that he could pursue his exhausted claims in a separate action if he so chose.  Dissatisfied, Moore lodged objections to the court's order and, when the court declined to reconsider its order dismissing the bulk of his claims, filed a notice of appeal on January 4, 2006.  This appeal is still pending.

As the screening of Moore's amended complaint was being completed, Moore filed a motion to further amend the amended complaint seeking to assert more claims against penitentiary officials and the United States Postal Service. This is the second time Moore has sought to add claims before the screening of his pleading has been completed.  At this point, the court will proceed forward with processing the amended complaint and then will address the motion to amend

## II.    DISCUSSION

### A.    Standards Governing Initial Review

When a prisoner seeks to sue a governmental entity, officer, or employee, the court is required under 28 U.S.C. § 1915A to conduct a preliminary screening of plaintiff's complaint to identify any cognizable claims and to dismiss the complaint, or any part of it, that is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant.  In addition, the court also has the power under § 1915(e)(2) to dismiss an *in forma pauperis* proceeding at any time the court determines the proceeding is frivolous or malicious, fails to state a claim upon which relief should be granted, or seeks monetary relief against an immune defendant.

In conducting it's a review, the court must keep in mind the admonition of the Eighth Circuit that *pro se* prisoner complaints are to be liberally construed and that the court is obligated to determine whether the complaint provides relief  "on any possible theory."  Haley v. Dormire, 845 F.2d 1488, 1490 (8th Cir. 1988); see also Haines v. Kerner, 404 U.S. 519, 520 (1972) (*pro se* complaints are subject "to less stringent standards than formal pleadings drafted by lawyers"); Atkinson v. Bohn, 91 F.3d 1127, 1128-29 (8th Cir. 1996).  The court may not dismiss the complaint unless it "appears beyond doubt that plaintiff can prove no set of facts that would demonstrate an entitlement to relief."  Gordon v. Hansen, 168 F.3d 1109, 1113 (8th Cir. 1999).

---

after Moore has had an opportunity to address the deficiencies with respect to the present pleading.  This being said, Moore may want to reconsider his motion to amend.  A cursory review of the proposed amendments suggests that the claims are probably frivolous as to the penitentiary officials and fantastic and delusional with respect to the United States Postal Service.  Further, it appears likely that Moore has not exhausted his administrative remedies with respect to the last of his claims of interference with mail, which makes the claim premature and adding that claim may result in his entire action having to be dismissed.  Finally, it does not appear that Moore has not requested any specific relief with respect  the "mail claims" and transfer from state to federal custody is not relief that this court can grant.

In construing the complaint, the court must weigh all factual allegations in favor of the plaintiff, but not need not consider facts that are clearly baseless, fanciful, fantastic, or delusional. Denton v. Hernandez, 504 U.S. 25, 31-33 (1992).  "A complaint is frivolous if it lacks an arguable basis in law or fact."  Martinez v. Turner, 977 F.2d 421, 423 (8th Cir. 1992) (citing Nietske v. Williams, 490 U.S. 319, 325 (1989)).  "It lacks an arguable basis in law if the claim is based on an indisputable meritless legal theory."  Id.

In this case, plaintiff alleges claims under 42 U.S.C. § 1983.  To state a claim pursuant to 42 U.S.C.§ 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).

## B.    Eighth Amendment Claims

### 1.    Deliberate Indifference to Exercise Needs - (Claim #1)

Moore contends that his confinement in administrative segregation constitutes cruel and unusual punishment to the extent that it unnecessarily restricts his ability to exercise or otherwise engage in recreational activities.  He claims he is confined to his cell for twenty three hours a day and is only allotted five hours of outdoor recreation per week.  He maintains that, as a consequence, his general health has deteriorated and that he experiences pain throughout his entire body.

Failure to provide an opportunity for adequate exercise can amount to cruel and unusual punishment under the Eighth Amendment, particularly if a prisoner's muscles are allowed to atrophy or the prisoner's health is threatened.  See e.g., Delaney v. DeTella, 256 F.3d 679, 683-684 (7th Cir. 2001); Wishon v. Gambon, 978 F.2d 446, 448-449 (8th Cir. 1992).  In this case, however, Moore acknowledges that he is allowed five hours of outdoor recreation a week, which, in most cases, is

sufficient to satisfy the Eighth Amendment. See id.; see also Baptisto v. Ryan, 2006 WL 798879, *33 (D. Ariz.) (discussing cases). Further, given Moore's prior history of making unfounded claims with regard to his medical condition, the court is skeptical of his claim that his physical condition has deteriorated and that he suffers pain throughout his body.

Nevertheless, because resolution of Moore's claim may be dependent upon additional factors, see Wishon v. Gambon, supra, it is premature to conclude there is no set of facts Moore could prove that would demonstrate an entitlement to relief. Consequently, Moore will be allowed to proceed with this claim beyond the screening stage subject to the warning set forth below regarding the consequences of making frivolous claims.

## 2.    Alleged use of excessive force - (Claim #3)

Moore contends that penitentiary staff have used excessive force when transporting him to and from his cell. Specifically, he contends that guards have repeatedly tried to break his wrists when putting on his handcuffs and that he is being subjected to "excruciating pain."

The Eighth Amendment protects inmates from the unnecessary and wanton infliction of pain by correctional officers, regardless of whether an inmate suffers serious injury as a result. Johnson v. Blauket, 453 F.3d 1108, 1112 (8th Cir. 2006). Officers are permitted to use force reasonably "in a good-faith effort to maintain or restore discipline," but force is not to be used "maliciously and sadistically to cause harm." Id. Factors to be considered in deciding whether a particular use of force was reasonable are whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury. Id.

This is not to say, however, that every push or shove that is later proven to be unnecessary constitutes a constitutional violation.  A *de minimus* use of force that is not "repugnant to the conscience of mankind" does not constitute cruel and unusual punishment, even if malicious. Hudson v. McMillian, 503 U.S. 1, 9-10 (1992).

In this case, mere handcuffing would not constitute cruel and unusual punishment, even if it produces discomfort.  Moore, however, claims it is being done purposefully in manner that produces "excruciating pain."  While there is substantial reason to doubt these allegations based upon Moore's prior history of making frivolous and exaggerated claims, it cannot be said at this point there is no set of facts that could be proved that would demonstrate an entitlement to relief. Cf. Davidson v. Flynn, 32 F.3d 27, 29-30 (2nd Cir. 1994).  Consequently, Moore will be allowed to proceed with this claim subject to the warning regarding the consequences of making frivolous claims.

**C.    Claims of retaliation by penitentiary staff - (Claim #2)**

Moore alleges in his amended complaint that the "North Dakota State Penitentiary employees have unconstitutional[ly] retaliated against the plaintiff on four occasions for participating in the prisoner grievance procedure."   He claims that the incidents are all casually related.  The court will address these alleged incidents seriatim.

**1.    Alleged retaliation by Darcy Klimpel - (incident #1)**

The first alleged incident of retaliation stems for a grievance submitted by Moore on November 22, 2005.  See Plaintiff's Proposed Amended Complaint, p. 4; see also Plaintiff's Proposed Complaint, Ex. D (Incident Report).  Apparently, Moore wrote something to the effect that any physical action he took toward Officer Darcy Klimpel would be in self defense.  See Plaintiff's

Proposed Complaint, Ex. D (Incident Report).  Finding this statement menacing, Officer Klimpel filed an incident report charging Moore with threatening a staff member.  Id.    The adjustment committee reviewed the incident and on November 28, 2005, made the following recommendation: two months loss of good time and twenty days disciplinary detention.  See Plaintiff's Proposed Complaint, Ex. E (Appeal from Disciplinary Committee Action).  Warden Schuetzle approved the committee's recommendation the same day.  See id.; see also Plaintiff's Proposed Complaint, Ex. E (Director's letter opinion re Appeal from Adjustment Committee Action).

Moore quickly filed an appeal with Warden Schuetzle, asserting that Officer Klimpel filed the incident report in retaliation for filing the grievance on November 22, 2005.  See Plaintiff's Proposed Complaint, Ex. E (Appeal from Disciplinary Committee Action).  Warden Schuetzle concluded that it was Moore's language, and not his act of filing a grievance, that led Officer Klimpel to file the incident report.  See id.  Nevertheless, on December 1, 2005, he reduced Moore's loss of good time to one month and disciplinary detention to ten days.  See id.

Dissatisfied, Moore filed an appeal with the Director of Institutions.  See Plaintiff's Proposed Complaint, Ex. E (Director's letter opinion re Appeal from Adjustment Committee Action).  Upon reviewing Moore's institutional record as well as the substantive language of his November 22, 2005, grievance, the Director concluded that Moore's statement was appropriately considered a threat and that the resulting disciplinary proceedings were not tantamount to retaliation.  See id.  Consequently, on January 20, 2006, she denied Moore's appeal.  See id.

### 2.    Alleged retaliation by Steve Foster - (incident #2)

The second alleged incident of retaliation stems from grievances filed by Moore in January, 2006.  See Plaintiff Proposed Complaint, p. 4.  Materials submitted by Moore with his initial

complaint reveal that he filed a "Step 1" grievance on January 16, 2006, claiming to be the target

of a male officer's sexual advances.  See Plaintiff Complaint, Ex. G.  Moore's case manager

responded immediately, advising Moore that insolence would not be tolerated and that an incident

report would be filed against him unless he could provide staff with greater detail about this alleged

encounter.  See id.  Moore proceeded to file a "Step 2" grievance on January 17, 2006, again

claiming that a male officer had propositioned him.  See Plaintiff's Complaint, Ex. H.  Noting that

he had failed to provide any evidence to support his claim, his case manager denied the grievance

on January 18, 2006.  See id.

On January 28, 2006, Case Manager Steven Foster filed an incident report charging Moore

with threatening a staff member, sexual harassment, and presenting false testimony to staff.  See

Plaintiff's Complaint, Ex. I.  He summarized the alleged harassment and his subsequent

investigation as follows:

> On January 17th I received a grievance from Mr. Moore describing an incident that
> allegedly took place between him and COII Sayler on January 9th.  Mr. Moore claims
> that COII Sayler asked  if he could "perform fellatio" on him and that he rubbed his
> penis and said, "ooh I know you do, damn you, damn you, you Negro buck." (see
> attached grievance) I informed Mr. Moore that he would receive an incident report
> unless he could give the specifics of this incident including where it took place and
> witnesses that would have been present during the alleged incident.  I had not
> received any additional information from Mr. Moore so I went to see him yesterday
> the 24th of January and asked him about this.  He did not initially tell me anything but
> finally did tell me that it took place at the cuff gate on the second tier west side of
> A.S. when he was up to see the doctor.  He did not give me any names of possible
> witnesses.  When taking an A.S. inmate off the tier for any reason the inmate is
> belted and cuffed and at least two staff are present.  On this particular day COII
> Saylor was present along with Doctor Hagan, LPN Jones, and nursing stident (sic)
> Crystal.  LPN Jones was in listening distance of and had a clear view of the gate and
> claims there is no way this event ever took place.  COII Sayler claims this never
> happened.  I talked to inmates Ben Smith who is in cell 61 which is the closest cell
> to the gate (about six feet away) and Ryan Thomas who is in cell 62.  They both
> claim that they are up and awake when doctor call is in progress and wait to see who
> is coming to see the doctor and that they both are able to see and hear everything that

takes place at the gate. They both claim that they have never witnessed any inappropriate behavior towards an inmate by a staff member. Mr. Moore was let out of his cell at 4:45 PM and secured again at 5:00 PM. During this doctor visit Mr. Moore became upset with Dr. Hagan for not allowing him medical tape for his fingers and became angry. He ignored several orders from staff and tried to intimidate officer Sayler before finally complying with the order. He received a report for this behavior from COII Sayler. (see attached report) This grievance is clearly in retaliation for receiving a report from COII Sayler and is designed to intimidate, embarras (sic) and harass the officer. When I was talking to Mr. Moore on the 24th he claimed that if I give him a report I will be next, "your next, just wait, your next." I finished my investigation on the 24th of January, 2006 . . .

Id.

The adjustment committee convened on January 30, 2006, to review the matter. See Plaintiff's Complaint, Ex. J. Notably, Moore refused to participate. See id. Based upon the incident report, Case Manager Foster's investigation, the physical evidence (i.e., the copies of Moore's grievances), and the inference of guilt drawn from Moore's refusal to participate in the proceedings, the committee concluded that Moore had committed the infractions and recommended a loss of six months good time plus thirty days disciplinary detention. See id.

Moore filed an appeal of the committee's decision with Warden Schuetzle on January 31, 2006, asserting that Case Manager Foster had filed the incident report in retaliation for his filing of the "Step 1" and "Step 2" grievances. See Plaintiff's Complaint, Ex. K. He also chided the committee for what he considered to be its failure to conduct an adequate, independent inquiry into the reliability and credibility of the witnesses identified by Case Manager Foster in his report. See id.

Warden Schuetzle denied Moore's appeal on February 2, 2006. See id. He opined there was no retaliation, that Moore had filed his grievance merely to humiliate staff, that unfounded accusations such the ones made by Moore would not be tolerated in the grievance process, and that

the sanctions recommended by the committee were fair.  See id.  He also emphasized that Moore

had chosen not to appear before the committee.  See id.  The Director of Institutions upheld his

decision on appeal.  See Plaintiff's Complaint, Ex. L.

### 3.  Alleged retaliation by warden Schuetzle re nurse Taghon complaints - (incident #3)

The third alleged incident of retaliation stems from an incident report signed by Warden

Schuetzle on January 27, 2006, charging Moore with two infractions: sexual harassment and

engagement in actions or activities hateful or demeaning toward an individual.  See Plaintiff's

Proposed Complaint, p. 5; see also Plaintiff's Complaint, Ex. M.  According to the report, Warden

Schuetzle was advised of correspondence from Moore to the North Dakota Board of Nursing dated

January 1, 2006, wherein Moore attributed boorish statements to Nurse Beth Taghon and

complained that she was having sexual relations with inmates as well as with her colleagues in the

penitentiary's infirmary.  See id.  Noting the dearth of corroborating evidence, Warden Schuetzle

concluded that Moore  had submitted these complaints in retaliation for an incident report she had

filed against him on October 9, 2005.  See id.[2]

The adjustment committee convened a disciplinary hearing on January 30, 2006.  See id.

Moore chose not to participate.  See id.  Finding that Moore's absence created an  adverse inference

of guilt, it concluded that Moore had committed the infractions as charged and recommended a loss

of six months of good time plus thirty days disciplinary detention.  See Plaintiff's Complaint, Ex.

---

[2]  Notably, the incident report filed by Nurse Taghon in October 2005 served as the basis for a claim of retaliation in the action filed by Moore in the fall of 2005.  There, Moore claimed that Nurse Taghon, in retaliation for his submission of a complaint to the North Dakota Board of Nursing, filed an incident report charging him with insolence to a staff member and engaging in hateful, demeaning activity.  He also claimed  that other penitentiary officials joined in the retaliation by endlessly continuing the disciplinary hearing on this matter.  The undersigned concluded Moore had not exhausted the administrative process as of the date of the filing of the complaint and also observed that the claim appeared to be frivolous on its face.

N. Jean Sullivan, the Warden's designee, approved the recommendation. <u>See</u> Plaintiff's Complaint, Ex. P.

Moore appealed this decision on the grounds that the incident report had been issued in retaliation for engaging in protected activity, that is, filing complaints against Nurse Taghon. <u>See</u> Plaintiff's Complaint, Ex. O.  Acting Warden Robert S. Heier denied the appeal on February 1, 2006. <u>See</u> <u>id.</u>  Initially, he acknowledged Moore's right to file complaints.  <u>See</u> <u>id.</u>  However, he concluded that the complaints were defamatory and that Moore had serially harassed Nurse Taghon. <u>See</u> <u>id.</u>  His decision was subsequently upheld on appeal by the Director of Institutions; in a letter dated February 22, 2006, the Director advised Moore that he had no constitutional right to lie and defame staff and that she was denying his latest appeal.  <u>See</u> Plaintiff's Complaint, Ex. P.

### 4.    Alleged retaliation by warden Schuetzle re the direct request for review to the DOCR Director - (incident #4)

Although not entirely clear, it appears the fourth alleged incident of retaliation may stem from a grievance Moore attempted to file directly with the Director of Institutions on September 7, 2006.  <u>See</u> Plaintiff's Complaint, Ex. R.  Attached to Moore's original proposed complaint is a document  captioned "APPEAL OF STEP 2 GRIEVANCE DECISION - TO DIRECTOR OF DOCR" and date-stamped September 7, 2006.  <u>See</u> <u>id.</u>  Therein Moore initially stated that his grievance was of a very sensitive nature and that he feared possible adverse effects if it is known at the institution.  <u>See</u> <u>id.</u>  He then claimed that Warden Schuetzle was instructing his subordinates not to respond to any of Moore's grievances and was tampering with Moore's mail.

On September 18, 2006, the Director of Institutions dispatched the following response to Moore in letter form:

> I do not find that this issue would cause adverse results if known in the institution and do not find that it is necessary to file directly to me. I am returning your grievance to you. Let me remind you AGAIN that I support Warden Schuetzle's method of managing your abuse of the grievance process.

Id.

In the proposed amended complaint, Moore contends that Warden Schuetzle retaliated against him on September 26, 2006, for participating in the prisoner grievance procedure by placing him in administrative segregation. Although not explicitly stated, it would appear that he believes that this alleged retaliation was attributable to and motivated by his efforts to file a grievance directly with the Director. However, it is also possible that Moore is claiming that his placement in administrative segregation was because of his participation in other grievance procedures.

### 5.    Discussion re the claims of retaliation

It is well established that taking retaliation against a prisoner for filing a grievance, pursuing an administrative appeal, or reporting misconduct to higher authorities can violate a prisoner's constitutional rights. E.g., Moore v. Plaster, 266 F.3d 928, 931-933 (8th Cir. 2001); Orebaugh v. Caspari, 910 F.2d 526, 528 (8th Cir. 1990); Madewell v. Roberts, 909 F.2d 1203, 1206-07 (8th Cir. 1990). But, this is does not mean that all of Moore's claims for retaliation are properly the subject of a § 1983 action.

The Supreme Court has made clear that a prisoner cannot make a claim for relief in a § 1983 action, for which success would imply the invalidity of confinement or the duration of the prisoner's sentence, without first exhausting habeas remedies. Edwards v. Balisok, 520 U.S. 641 (1997); Preiser v. Rodriguez, 411 U.S. 475 (1973); see Wilkinson v. Dotson, 544 U.S. 74 (2005); Heck v. Humphery, 512 U.S. 477 (1994); Wolff v. McDonnell, 418 U.S. 539 (1974). This is commonly

referred to as the "Heck bar."  In the recent case of Wilkinson v Dotson, the Supreme court

summarized its prior decisions in this area states as follows:

> These cases, taken together, indicate that a state prisoner's § 1983 action is barred
> (absent prior invalidation)--no matter the relief sought (damages or equitable relief),
> no matter the target of the prisoner's suit (state conduct leading to conviction or
> internal prison proceedings)- -if success in that action would necessarily demonstrate
> the invalidity of confinement or its duration.

544 U.S. at 81-82.[3]

In Moore's first three claims of retaliation, he alleges that prison officials brought

disciplinary charges against him in retaliation for him having engaged in protected rights.

According to documents attached to Moore's pleadings, the charges were referred to an adjustment

committee that found Moore guilty of the charges.  And, in each of the three cases, part of the

resulting punishment was a denial of good-time credits.[4]

If Moore had explicitly stated in his amended complaint that he is seeking restoration of his

good-time credits, his first three claims for retaliation would clearly be Heck barred.[5]  But, Moore

has not requested that his good-time credits be restored, and it is not entirely clear that he is even

challenging the validity of the disciplinary convictions.  Rather, the only relief he requests relative

---

[3]  The Supreme Court has made clear, however, that the Heck does not extend to all challenges to prison
disciplinary proceedings and is limited to those that necessarily  impact the fact or duration of the underlying sentence
of imprisonment.  Muhammad v. Close, 540 U.S. 749, 754 (2004) (*per curiam*).

[4]  In particular, Moore was deprived of one month of good time with respect to charges initiated by Darcy
Klimpel, six months good time with respect to the charges initiated by Steve Foster, and six months good time resulting
from the charges initiated by warden Schuetzle related to nurse Taghon.

[5]  In Moore v. Bertsch, Case No. 1:05-cv-098, the undersigned concluded that Moore's claims of retaliation
in that case were Heck barred.  In that case, however, Moore was clearly challenging the validity of the underlying
disciplinary actions and requested that the denied good-time be restored.  See Report and Recommendation, Case No.
1:05-cv-098, Docket No. 30.

to his claims for retaliation is that he be transferred from state to federal custody to serve out the remainder of his sentence.

The previously cited case law makes clear that it does not make any difference what relief is requested in term of application of the Heck bar so long as success in the § 1983 action would necessarily imply the invalidity or duration of the prisoner's confinement. See also Portley-el v. Brill, 288 F.3d 1063 (8th Cir. 2002) (§ 1983 action seeking money damages and expungement of the disciplinary action resulting in a denial of good-time credits was Heck barred and properly dismissed upon a § 1915A screening). But, what is not clear is whether Moore must prove the invalidity of his disciplinary convictions before he can prevail with respect to his first three retaliation claims, which would then imply the invalidity of the denial of this good-time credits,[6] or whether there are circumstances in which he can litigate the validity of the disciplinary convictions and still avoid the Heck bar, such as attempting to waive his right to restoration of the good-time credits.[7] Also, further complicating this issue is the fact the court does not have the power to grant the relief that Moore has requested, which is a transfer to federal custody. This means Moore will have to request different relief in order to avoid dismissal of his claims and that different relief may invoke the Heck bar. This being the case, and because of the other mentioned uncertainties, the

---

[6] For example, it may be possible for a prisoner to concede the disciplinary convictions, but claim that the actionable retaliation was the imposition of excessive discipline or the repeated bringing of disciplinary charges with a retaliatory animus. See Johnson v. Litscher, 260 F.3d 826, 831(7th Cir. 2001); cf. Muhammad v. Close, 540 U.S. 749, 754 (2004) (per curiam); Cornell v. Woods, 69 F.3d 1383, 1389 (8th Cir. 1995) (upholding claim of retaliatory punishment). And, so long as the prisoner does not challenge the disciplinary convictions or ague that the denial of good-time credits constituted excessive punishment, there presumably would be no Heck bar. See id.

[7] Peralta v. Vasquez, __ F.3d __, 2006 WL 2948816 (2nd Cir. 2006) (allowing a New York prisoner to waive his right to restoration of his good-time credits to avoid the Heck bar premised upon the federal and state courts in New York having adopted the doctrine of judicial estoppel, which the court held guaranteed the waiver being given effect in subsequent federal and state court proceedings); but cf. DeMers v. DeMers, 2006 ND 142, ¶ 19, 717 N.W.2d 545. (doctrine of judicial estoppel has not yet been formally adopted in North Dakota).

question of whether the Heck bar applies cannot be resolved now, but Moore is cautioned that one or more of his retaliation claims may not be cognizable in this action.

Aside from possible Heck concerns, the court has reviewed the attachments to Moore's complaint. And, while the court is not now inclined to rule on the issue because of the possibility it may be premature, the material set forth in the attachments suggests that Moore's retaliation claims are themselves retaliatory and, consequently, frivolous and malicious.

### D.    Claim against the Fargo Police Department re failure to provide DNA test results - (Claim #4)

As noted above, Moore was convicted of gross sexual imposition. Moore claims that he was deprived of his right to due process and the opportunity to demonstrate his actual innocence of this charge on account of the Fargo Police Department's refusal to provide him with the results of DNA tests allegedly performed on the biological evidence in its possession. He seeks an order from the court directing the Fargo Police Department to produce these test results.

Moore made a similar claim, and essentially sought the same relief in Moore v. Bertsch, case No. 1:05-cv-098, albeit against a different defendant – the director of the state criminal laboratory. In that case, the undersigned observed:

> There is a split in the circuits as to whether or not a § 1983 claim seeking DNA evidence is Heck barred; the Fourth and Fifth Circuits say yes and the Ninth and Eleventh Circuits say no. Compare Kutzner v. Montgomery County, 303 F.3d 339 (5th Cir. 2002); Harvey v. Horan, 278 F.3d 370, 375-379 (4th Cir. 2002), rehearing en banc denied 285 F.3d 298 (4th Cir. 2002); with Osborne v. District Attorney's Office for the Third Judicial Circuit, 423 F.3d 1050 (2005); Bradley v. Pryor, 305 F.3d 1287, 1288 (11th Cir. 2002). However, only the Ninth Circuit's decision came after the Supreme Court's opinion in Dotson, supra, and, as the Ninth Circuit observes, the decisions of the Fourth and Fifth Circuits are questionable given the analysis of the Supreme Court in Dotson. Osborne, 423 F.3d at 1055-56.
> What is more problematic is whether the failure to produce lab results of DNA evidence postconviction implicates any constitutional right cognizable in a § 1983 action. This appears to be an evolving area of § 1983 law with the issue arising most often in the slightly different contexts of either a demand that the state perform

postconviction testing or that the biological evidence be produced for postconviction testing by third parties. <u>See generally</u> <u>Osborne</u>, 423 F.3d at 1056 (reversing denial of § 1983 claim by district court on <u>Heck</u> grounds and leaving it to the district court on remand to determine in the first instance whether plaintiff has a constitutional claim); <u>Harvey v. Horan</u>, 285 F.3d 298 (4th Cir. 2002) (concurring opinions of C.J. Wilkinson and J. Luttig expressing differing opinions on whether there is a constitutional right to postconviction DNA testing and whether such right is actionable in a § 1983 action); <u>Moore v. Lockyer</u>, 2005 WL 2334350, *5-9 (N.D. Cal. 2005) (dismissing a § 1983 claim for release of biological evidence for DNA testing on statute of limitations grounds and thereby avoiding the constitutional issue); <u>Godschalk v. Montgomery County District Attorney's Office</u>, 177 F. Supp. 2d 366 (E.D.Pa. 2001) (ordering access to the genetic material for postconviction DNA testing in a § 1983 action).

<u>Report and Recommendation</u>, Case No. 1:05-cv-098, Docket No. 30. Since the foregoing observations were made, the debate has continued. <u>See</u> <u>Grayson v. King</u>, 460 F.3d 1328 (11th Cir. 2006) (holding that a § 1983 claim can be brought for access to biological evidence for DNA testing, but upheld the denial of access on the merits for failing to satisfy any of the possible requisite criteria); <u>Wade v. Brady</u>, 2006 WL 3051770 (D. Mass. Oct 27, 2006) (denying a motion to dismiss a claim for DNA testing for failure to state a claim under § 1983 and discussing recent cases). Given the novelty of the issues raised, the dearth of Eighth Circuit case law on the issue, and the fact that resolution of the constitutional issue (should it become necessary) would benefit from a more developed set of facts, Moore will be permitted to proceed with this claim.

### E. Claims of retaliatory and malicious prosecution by Special Agent Dahl - (Claim # 5)

In a letter to the Bureau of Investigations ("BCI") dated November 15, 2005, Moore accused Officer Klimpel of, inter alia, brandishing a gun and making racial slurs in the presence of African-American inmates. <u>See</u> Plaintiff's Amended Complaint, Ex. X. The BCI responded by launching an investigation and dispatching Special Agent Thomas Dahl on November 22, 2005, to interview Moore and Klimpel. <u>See</u> Plaintiff's Amended Complaint, Ex. Y.

Finding Moore's claims to be unfounded, Special Agent Dahl swore out a criminal complaint on February 7, 2006, charging Moore with knowingly making a false report to law enforcement, a Class B misdemeanor.  See id., see also Plaintiff's Amended Complaint, Ex. Z.  The criminal complaint was later dismissed on motion by the State.  See Plaintiff's Amended Complaint, Ex. 2A.

Moore contends in his proposed amended complaint that "Thomas Dahl has unconstitutionally retaliated and has unconstitutionally maliciously prosecuted the plaintiff and has unconstitutionally maliciously initiated criminal charges against the plaintiff by charging the plaintiff in a criminal complaint in the Burleigh County District Court for a Class A misdemeanor." Liberally construed, it appears these allegations are sufficient to present a cognizable § 1983 claim. E.g., Hartmann v. Moore, 126 S.Ct. 1695 (2006); see also Moran v. Clarke, 296 F.3d 638, 642-648 (8th Cir.2002) (en banc); Smithson v. Aldrich, 235 F.3d 1058 (8th Cir. 2000).

This being said, it appears that Moore will have to prove existence of the lack of probable cause in order to be able to prevail on his  retaliatory accusation claim against Special Agent Dahl. Hartmann v. Moore, supra.  And, in reviewing the attachments to Moore's proposed amended complaint, there is every indication that there was probable cause for the criminal charge and that Moore's claim is frivolous and malicious.

Dismissal of the complaint by the state's attorney does not  necessarily equate with lack of probable cause.  And, in this case, it appears the reason for the dismissal was a decision not to waste limited prosecutorial resources in pursuing a charge against a prisoner who is already serving a lengthy criminal sentence.  But, again, because of the concern it may be premature to rule on this point now, the probable cause issue will be left for a later stage, along with the issues of whether this claim is frivolous or malicious.

**F.    The problem with Moore's claims for relief**

The only relief that Moore requests in his amended complaint against defendants Schuetzle is that he be transferred from state to federal custody to serve the duration of his sentence. Obviously, the court does not have the power to grant this relief. Also, Moore does not request any specific relief with respect to his claim against Special Agent Dahl, unless he is requesting transfer to federal custody for this claim also.

Generally speaking, a court should not dismiss an action for failure to state a claim because the plaintiff has requested the wrong relief if it appears that other relief may be available. See e.g., Doss v. South Central Bell Telephone Co., 834 F.2d 421, 425 (5th Cir.1987) (demand for an improper remedy not fatal if it appears plaintiff would be entitled to a different form of relief); Doe v. United States Dept. of Justice, 753 F.2d 1092, 1104 (D.C. Cir.1985) (complaint sufficient so long as it appears plaintiff is entitled to some relief even though not the relief requested). But, when a prisoner is seeking to sue a governmental entity or official, or is otherwise seeking leave to proceed in forma pauperis, Congress has made clear with its enactment of the provisions of the Prisoners Litigation Reform Act that the courts should determine as early as possible whether a prisoner's claims are frivolous, malicious, fail to state a claim, or seek monetary relief from an immune defendant.

In this case, Moore's claims against Schuetzle have no possibility of success and would be frivolous if the only relief Moore requests is that he be transferred to federal custody. The same holds true for his claim against Special Agent Dahl if Moore is seeking the same relief as to him, as well. However, there may be other relief that the court could order if Moore succeeds on these claims. Further, the court notes that Moore has requested a preliminary injunction ordering that he be transferred out of administrative segregation and back into the general prison population. So, at least to this extent, he may be seeking a remedy other than a transfer to federal custody with respect

to the claims against Schuetzle.  Finally, Moore's failure to request different relief with respect to his claim against Special Agent Dahl appears simply to have been one of oversight when Moore added this claim as part of his amended complaint.

Under these circumstances, it is appropriate that Moore have an opportunity to amend his pleadings to rectify the problem that the court lacks the authority to grant the only relief he has so far requested as to defendants Schuetzle and Dahl.  Consequently, Moore shall have <u>ten</u> days to file with the court a supplement to his proposed amended complaint specifying any additional relief he is seeking with respect to Schuetzle and Dahl.  If the undersigned finds the supplement to be appropriate, the court will order that it be attached to the amended complaint for service.  If Moore fails to seek additional relief as to these claims, the undersigned will recommend that the claims be dismissed as being frivolous.

### G.    The problem of improper joinder

Rule 20 of the Federal Rules of Civil Procedure regarding joinder of parties provides in relevant part the following:

> All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

In this case, the claims against the Fargo Police Department and Special Agent Dahl do not appear to arise from the same transactions or occurrences with respect to each other or with respect to the claims against defendant Schuetzle.  Consequently, it appears that the claims should be separated into three different actions.

Rule 21 of the Federal Rules of Civil Procedure permits a court on its own initiative to order severance of misjoined parties at any stage of the proceedings, including this one.  <u>See</u> <u>Sanchez v.</u>

Johnson, 275 F.3d 1080 (Table), 2001 WL 1468049 (5th Cir. 2001) (*per curiam*); Payne v. Corrections Corp. of America, 194 F.3d 1313 (Table), 1999 WL 970295 (6th Cir. 1999) (*per curiam*); Smith v. Berdanier, 2005 WL 3488426 (M.D. Pa. 2005). Insistence on proper joinder is important in *pro se* prisoner proceedings because it helps to minimize the confusion and expense, particularly for the misjoined defendants. And, it helps to insure that the policies behind the "three strikes" provisions of 28 U.S.C. § 1915(g) are fully implemented. Nelson v. Francis, 2003 WL 21766528, *2 (N.D. Tex. 2003).

Rule 21 commands, however, that misjoinder should not be grounds for dismissal of the action. Also, it is appropriate to give Moore an opportunity to respond before the court upon its own initiative seeks to remedy an apparent misjoinder. Moore will be given ten days to show cause why his claims against Schuetzle, the Fargo Police Department, and Special Agent Dahl should not be separated into three separate actions.

### H.    The consequences of making frivolous claims

Moore is hereby warned that he will not be permitted to proceed *in forma pauperis* with respect to any civil action or appeal (*i.e.*, he will be required to pay the full filing fee in advance) if on three or more prior occasions he has brought actions or appeals that are dismissed because of failure to state a claim upon which relief can be granted or are deemed frivolous or malicious, unless it can be demonstrated that the prisoner is under imminent danger of serious bodily injury. 28 U.S.C. 1915 (g). From what the court has reviewed so far, most, if not all, of Moore's claims are in danger of satisfying this criteria and Moore would be well-advised to reconsider his claims.

### III.    CONCLUSION

Having conducted an initial review of the plaintiff's amended complaint, it is hereby **ORDERED** as follows:

1. Moore will be permitted to proceed against defendant Schuetzle with respect to Claims One, Two, and Three as identified above, but the clerk <u>shall not make service until further order of the court</u>.

2. Moore will be permitted to proceed against the Fargo Police Department with respect to Claim Four, but this claim will be severed and served as a separate action unless Moore cause within <u>ten</u> days shows why the claim should not be severed.

3. Moore will be permitted to proceed against Special Agent Dahl with respect to Claim Five but this claim shall be severed and will be served as a separate action unless Moore shows cause within <u>ten</u> days why the claim should not be severed.

4. The Clerk shall attach to the amended complaint the exhibits from the initial complaint and re-file the amended complaint with all the exhibits attached as the current operative pleading. The Clerk shall await further order from the court regarding the attachment to the amended complaint of any supplement by Moore that expands upon the relief that he is requesting with respect to his claims against defendants Schuetzle and Dahl. If Moore fails to request additional relief with respect to these claims, the undersigned will recommend that one or both of the claims be dismissed as frivolous.

5. The clerk shall await further order from the court regarding possible severance of the claims, the style of the captions for any severed proceedings, and service of any pleadings.

6.     If Moore decides to heed the warning of the court with respect to one or more of his claims, he can file with the court a pleading indicating which claims he desires to withdraw or he can file a new proposed amended complaint that deletes the claims, but does not add new ones. The withdrawal of the claims at this point will not be counted as a strike pursuant to 28 U.S.C. § 1915(g). Any amended pleading filed by Moore in accordance with the foregoing shall not contain any new claims. If Moore wishes to bring new claims, he must either file a new action or file a motion to amend the amended complaint, which motions will be addressed following processing of the present amended complaint.

7.     Any pleadings filed in response to the foregoing shall be subject to further review and screening for conformance with this order and the provisions of 28 U.S.C. § 1915A.

Dated this 20th day of November, 2006.


                                   /s/ Charles S. Miller, Jr.
                                   Charles S. Miller, Jr.,
                                   United States Magistrate Judge