**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Anthony James Moore, | ) | |
| | ) | |
| Plaintiff, | ) | **AMENDED ORDER GRANTING IN** |
| | ) | **PART MOTION TO AMEND** |
| | ) | **AMENDED COMPLAINT,** |
| vs. | ) | **AND REPORT AND** |
| | ) | **RECOMMENDATION TO DENY** |
| Timothy Schuetzle, in his individual and | ) | **MOTION TO ADD POSTAL SERVICE** |
| official capacities | ) | **AS A PARTY** |
| | ) | |
| Defendant, | ) | Case No. 1:06-cv-079 |

## I.    BACKGROUND

        This is civil rights action being brought by plaintiff Anthony James Moore ("Moore"), who

is a prisoner at the North Dakota State Penitentiary and no stranger to this court.  Prior to the filing

this action, Moore had filed two other civil rights actions against numerous defendants, the dismissal

of one of which is still pending on appeal.

        In this case, Moore filed a complaint seeking initially to sue defendant Timothy Schuetzle,

who is the warden at the North Dakota State Penitentiary, as well as the Fargo Police Department.

Since Moore requested permission to proceed *in forma pauperis*, the court was obligated to screen

his complaint pursuant to the provisions of 28 U.S.C. § 1915A.  Before the court was able to screen

Moore's initial complaint, he filed an amended complaint that added a new claim against a new

defendant, Thomas Dahl, who is special agent for the North Dakota Crime Bureau.

        The court then proceeded to screen the amended complaint, but, just as that screening was

being completed, Moore filed a motion seeking permission to file a second amended complaint to

add new claims against defendant Schuetzle and also against an additional party, the United States

1

Postal Service.[1]  At that point, the court indicated it would address the motion to amend following the completion of the screening process.

Following the screening of Moore's amended complaint as required by 28 U.S.C. § 1915A, the undersigned issue an order on November 11, 2006, identifying the following claims for relief set forth in the amended complaint:

| | |
|---|---|
| Claim One | Deprivation of adequate exercise by prison officials during extended confinement in administrative segregation resulting in cruel and unusual punishment. |
| Claim Two | Unlawful retaliation by prison officials on four allegedly causally-related occasions for his having engaged in protected conduct. |
| Claim Three | Use of excessive force by prison officials when taking him to and from his cell amounting to cruel and unusual punishment. |
| Claim Four | The refusal of the Fargo Police Department to provide copies of DNA tests related to his state-court conviction. |
| Claim Five | Unlawful retaliation by Special Agent Dahl of the North Dakota Crime Bureau consisting of his allegedly maliciously instituting criminal proceedings against Moore. |

But, because claims four and five against the Fargo Police Department and special agent Dahl, respectively, appeared to be unrelated to the claims against Schuetzle, the court ordered that Moore show cause why the should not be split into separate actions.  Also, since the only relief that Moore

---

[1]  The pleading Moore submitted was entitled "Motion for Order to Amend Complaint," and correctly so since Moore needed to obtain leave of court to file a second amended complaint under  Fed. R. Civ. P. 15.

pled in his amended complaint against Warden Schuetzle and special agent Dahl was that he be transferred from state to federal custody and it appearing that such relief could not be granted, particularly with respect to the claim against Special Agent Dahl, the undersigned ordered that Moore be given an opportunity to supplement his amended complaint by requesting additional relief and warned Moore that his claims may be subject to dismissal as being frivolous if he failed to do so.

Moore appealed the undersigned's screening order to the district judge, which appeal was denied.  Following the denial of this appeal, Moore submitted his response to the order to show cause as to why his claims should not be severed into separate actions.  After reviewing the response, the undersigned concluded that the claims were misjoined and ordered that the claims against the Fargo Police Department and against special agent Thomas Dahl be severed from the claims against Warden Schuetzle and split into separate actions.

Also following the denial of his appeal, Moore filed a "Statement of Clarification" stating that he did not intend to change his request for relief and made clear that the only relief he was seeking in his amended complaint was that he transferred from state to federal custody, except for the injunctive relief he is seeking from the Fargo Police Department regarding his claim for production of DNA evidence.

What is now before the court is Moore's motion to amend his amended complaint. In his motion to amend, Moore seeks to add claims against Schuetzle and the United States Postal Service for wrongfully opening and viewing his legal or privileged mail on three separate occasions.  It appears from the motion and its attachments that Moore allegedly received three pieces of mail that were torn open enough so that part of the contents were visible. As to these three pieces of mail, it

3

appears Moore's claim is that it must have been either state prison officials or United States Postal Service employees  that wrongfully interfered with his mail on these three occasions.

Also, in the motion to amend, Moore further alleges that prison officials on two other occasions wrongfully opened and viewed his legal or privileged mail.  As to these two instances, he does not claim the United States Postal Service was involved.

In his motion to amend, the only relief Moore seeks is the relief that he initially included in his amended complaint, which is a transfer to federal custody and injunctive relief as to the Fargo Police Department with respect to the DNA evidence.  In its prior order addressing the amended complaint, the court warned Moore that  transfer to federal custody was probably beyond the court's authority to order and that he may want to reconsider his motion to amend in this light.  Moore, however, did not heed the warning and, instead, filed his "clarification" reaffirming the limited relief that he is seeking and cited the court to the Eighth Circuit's decision in <u>Haley v. Dormire</u>, 845 F.2d 1488 (8th Cir. 1989), as authority for the proposition that the court has authority to transfer him to federal custody.

In <u>Haley</u>, a *pro se* inmate initiated a civil rights actions alleging, *inter alia*, that prison officials had conspired to keep the inmate confined to the prison's special management facility.  <u>See</u> 845 F.2d 1488, 1489.  He sought declaratory and injunctive relief, including a transfer to another prison.  <u>See</u> <u>id.</u>  Following its initial review of the inmate's complaint, the district court dismissed his claims on the grounds that they were frivolous.  <u>See</u> <u>id.</u> at 1489-90.  On appeal, the Eight Circuit concluded that the inmate's claims were not legally frivolous and remanded the matter back to the district court for further proceedings.  It also denied without prejudice a motion by the inmate for transfer to federal custody, the presumable basis being that the request for such a transfer was made

in the first instance on appeal, but stated that the inmate "may wish to file this motion in the district court." Id.  Seizing upon this language, Moore asserts that the Eighth Circuit has not held that such relief can be granted.

Administration of prisons, including particularly state prisons, is generally not within the province of the court, but, in rare and extreme cases, federal courts have ordered a transfer of state prison inmates.   Such was the case in Walker v. Lockhart, 713 F.2d 1378 (8th Cir. 1983).  There, an inmate convicted of murdering a Little Rock, Arkansas, policeman requested that he be allowed to serve the remainder of his sentence outside the Arkansas prison system on account of threats allegedly made against his life by his warden.  The district court rejected his request, leaving the matter of the inmate's safety to the discretion of Arkansas prison officials.  On appeal, the Eighth Circuit concluded there was undisputable evidence of an unusually high risk of physical danger to the  inmate.  Consequently, it ordered that the inmate be transferred to a place of incarceration outside of Arkansas in either in a federal or another state's correctional institution.[2]

The Fifth Circuit has also recognized that a transfer of custody can be ordered to ensure an inmate's safety.  In Streeter v. Hopper, 618 F.2d 1178, 1182 (5th Cir. 1980), it affirmed a district court's decision to order the transfer of two inmates whose lives were in danger.  In ordering the transfer, the district court had based its decision on evidence that placement in the general prison

---

[2]  In reversing the decision of the district court, the Eighth Circuit held:
[The inmate's] life is put in danger by his incarceration in the Arkansas general prison population and that [the inmate] has established the right to serve the remainder of his sentence in an institution outside of Arkansas where he will have the same privileges and obligations as other prisoners, but without facing the undue risks and fear for his safety.  Accordingly, we reverse the judgment of the district court denying [the inmate's] section 1983 claim.  We remand this case to the district court for entry of an order in conformity of this opinion directing [the warden] to arrange without undue delay for the transfer of [the inmate] to a place of incarceration outside of Arkansas, either in a federal or other state's correctional institution.
713 F.2d at 1383.

population had put the inmates at grave risk and that their present facility was unable to adequately guarantee their safety.  Although it expressed reluctance to interfere in the operation of state prisons, the Fifth Circuit concluded that the transfer of the inmates to another facility was warranted as they were exposed to conditions more dangerous than those of normal prison life.

The fact that this court might have the power to order state officials to transfer a prisoner in rare and extreme cases does not mean it has the power and authority to require federal prison officials to <u>accept</u> Moore as prisoner for service of his state prison sentence.  This issue was addressed directly in the case of <u>Fisher v. Goord</u>, 981 F. Supp. 140 (S.D.N.Y. 1997).  In that case, the court concluded federal courts do not have the authority force federal prison officials to accept state prisoners.  In relevant part, the court stated the following:

> [W]hen a state has primary custodial jurisdiction over an inmate, a federal court cannot order the delivery of the defendant for service of a sentence in a federal institution.  Such an order would be tantamount to a transfer of custody beyond the jurisdiction of the federal court.

981 F. Supp. at 177.  In so holding, the court noted that the Eighth Circuit's decision in <u>Walker</u> was not inapposite because in that case the Eighth Circuit's decision that the prisoner be transferred was directed to the state officials who had jurisdiction over the prisoner.  <u>Id</u>.

Based on the foregoing, it appears that this court would have the power to order state officials to transfer a prisoner to another state institution in an extreme case and, in even rarer cases, to order that state officials arrange for a prisoner's housing outside the state either in another state's facilities or possibly even in the federal prison system, presumably on a contract basis.  And, it may be that state officials, faced with such an order, would be able to arrange housing in a federal prison based upon the voluntary cooperation of federal authorities.  But, if the federal authorities did not want to cooperate, it appears this court lacks the power to order otherwise and, in fact, lacks the

power to order a transfer to federal custody in the first instance, which is the only relief that Moore
is seeking with respect to defendant Schuetzle.

.       Leave to amend pleadings should be freely granted "absent a good reason for denial, such
as undue delay, bad faith, undue prejudice to the nonmoving party, or futility." Moore v. Jackson,
123 F.3d 1082, 1089 (8th Cir. 1997) quoting Fuller v. Secretary of Defense of the United States, 30
F.3d 86, 88 (8th Cir. 1994); see also Becker v. Univ. of Nebraska at Omaha, 191 F.3d 904, 908 (8th
Cir. 1999); Brown v. Wallace, 957 F.2d 564, 566 (8th Cir. 1992).  At this point, because Moore is
proceeding *pro se*, the court is inclined to give him more latitude than might otherwise be accorded
a person who is proceeding with counsel. Cf.  Haley v. Dormire, 845 F.2d 1488, 1490 (8th Cir.
1988); see also Haines v. Kerner, 404 U.S. 519, 520 (1972).  And, while it appears that the court
lacks the power to grant Moore a transfer to federal custody, which is the only relief he seeks with
respect to Schuetzle, it cannot be said at this point that Moore would be unable to prove a set of facts
that would entitle him to a court-ordered transfer to another jurisdiction, which is somewhat similar
relief.

        What this has to do with Moore's additional claims regarding interference with his mail may
be very little since wrongful interference with legal mail most certainly would not be grounds for
the drastic relief Moore is seeking, at least by itself.   Whether proof of wrongful interference with
legal mail in conjunction with proof of the matters Moore is claiming, however, may be another
question.  Nevertheless, Moore is again warned that his claims against Schuetzle are likely to
ultimately fail if he persists in claiming a transfer as his only requested remedy since this relief
would only be available in extreme cases and it is unlikely this case is one of them.

While the undersigned is inclined to give Moore the benefit of the doubt and  grant the motion to amend as to defendant Schuetzle,[3] there is no such inclination with respect to the request to add the United States Postal Service as a party defendant.  There is no other way to put it:  Moore's belief that a couple of pieces of torn mail amount to an attempt on the part of postal authorities to violate his constitutional right to communicate in confidence with counsel is simply fantastic and delusional.[4]  Based on the authority previously cited, the court is not obligated to permit a motion to amend in such a situation.  See also  Further, even if the motion was granted and the United States Postal Service was added as a party, the claims would be subject to immediate dismissal under 28 U.S.C. §§ 1915(e)(2)(B).

The undersigned has the authority to grant or deny Moore's motion to amend (subject to the right of Moore to appeal the undersigned's decision) since a motion to amend is not a dispositive motion.  E.g. Pagano v. Frank, 983 F.2s 343, 346 (1st Cir. 1993).  However, out of an abundance of caution and because this is also essentially a screening of the proposed amended complaint pursuant to the provisions of  28 U.S.C. § 1915A, the portion of Moore's motion to amend in which he seeks

---

[3]   The court is also giving Moore the benefit of the doubt in construing the facts pled in his mail claims as alleging a deprivation of his constitutional rights.  Moore alleges that state prison officials failed to follow their mail policies.  In most cases, however, a mere failure to follow state law or prison regulations is not enough without more to constitute a deprivation of constitutional rights. See, e.g., Phillips v. Norris, 320 F.3d 844, 846-847 (8th Cir. 2003); Johnston v. Luebbers, 288 F.3d 1048, 1053 n.3 (8th Cir. 2002).
    This court has previously addressed when interference with legal mail can give rise to a constitutional violation in a prior case involving Mr. Moore in which all of his mail claims were dismissed on the merits.  Moore v. Schuetzle, 354 F. Supp. 2d 1065, 1078-79 (D.N.D. 2005) aff'd 172 Fed.App'x 133 (8th Cir. 2006).  In this case, Moore refers to the mail in his pleadings as "legal" or "privileged" mail.  However, as the court previously noted in Moore's prior case, not all mail classified as privileged by prison officials constitutes "legal" mail that is entitled to the constitutional protections that Moore claims have not been followed. See id.

[4]   While there may be circumstances in which prison officials may have some malevolent reason for interfering with Moore's confidential legal mail, it is more than far-fetched that United States Postal Service employees  would have such reason or motive.  Cf. Gardner v. Howard, 109 F.3d 427, 430-31(8th Cir.1997) (holding that an isolated incident of interference with legal mail,  without any evidence of improper motive or resulting interference with [the inmates] right to counsel or to access to the courts, does not give rise to a constitutional violation).

to assert claims against the United State Postal Service is being presented for court action upon a report and recommendation.

Based on forgoing, it hereby **ORDERED NUNC PRO TUNC** as follows:

1.    Moore's motion to amend his amended complaint is **GRANTED IN PART** as to the interference with legal mail claims against defendant Schuetzle.

2.    Because of Moore's confinement in administrative segregation and the difficulty he has in making the necessary copies and corrections, the clerk is ordered to take Moore's amended complaint at Docket No. 9 and attach it to Moore's motion to amend and attached exhibits (which essentially is in the form of a seconded amended complaint) and then re-file the conformed document as the seconded amended complaint.  The clerk is then instructed to make service of the second amended complaint upon defendant Schuetzle along with a copy of this order.

Also, based on the foregoing, it is hereby **RECOMMENDED NUC PRO TUNC** that Moore's request to add the United States Postal Service as an additional party defendant be denied upon the grounds of frivolousness in that his claims against the United States Postal Service are obviously fanciful, fantastic, or delusional, but that this denial be without prejudice to Moore filing a paid complaint against the United States Postal Service.  Cf. Wilson v. Johnston, 68 Fed.App'x 761 (8th Cir. 2003) (upholding dismissal of *pro se* claim that was clearly baseless, fanciful, fantastic, or delusional, but modifying the dismissal to be without prejudice to the filing of a paid complaint citing Denton v. Hernandez, 504 U.S. 25, 34 (1992)).

## NOTICE OF RIGHT TO FILE OBJECTIONS

Pursuant to Local Rule 72.1(3)(4), any party may object to this recommendation within ten (10) days after being served with a copy of this Report and Recommendation.  Failure to file appropriate objections may result in the recommended action being taken.

Dated this 13th day of December, 2006.


/s/ Charles S. Miller, Jr._____
Charles S. Miller, Jr.,
United States Magistrate Judge